UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
SUADA HADZIJIC,                                                  :

                          Plaintiff,                                      :

                          -v.-                                             :

ART FOOD LLC et al.,                                             :

                          Defendants.                                     :
-----------------------------------------------------------------X

REPORT & RECOMMENDATION
24 Civ. 7205 (LGS)(GWG)

**GABRIEL W. GORENSTEIN, United States Magistrate Judge:**

Plaintiff Suada Hadzijic filed this pro se employment discrimination action in September 2024, alleging that Art Food LLC and Diane Getchius ("defendants") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to e-17; the Americans with Disabilities Act, 42 U.S.C. §§ 12101-213; and the New York State Human Rights Law, N.Y. Exec. §§ 290-97. See Complaint, filed Sept. 23, 2024 (Docket # 1) ("Compl."). During an April 2025 mediation conference, the parties signed a term sheet that purported to settle the action. Defendants now move for an order enforcing the term sheet, which plaintiff opposes.[1] For the following reasons, defendants' motion should be granted.

---

[1] See Notice of Motion to Enforce Settlement, filed Aug. 8, 2025 (Docket # 47) ("Defs.' Mot."); Defendants' Memorandum of Law in Support of Their Motion to Enforce the Parties' Settlement, filed Aug. 8, 2025 (Docket # 48) ("Mem."); Declaration of Annabel R. Stanley in Support of Defendants' Motion to Enforce Settlement, filed Aug. 8, 2025 (Docket # 50) ("Stanley Decl."); Defendants' Reply Memorandum of Law in Further Support of Their Motion to Enforce the Parties' Settlement (Docket # 55) ("Reply"). Hadzijic filed a letter opposing defendants' motion, see Letter from Suada Hadzijic, filed Aug. 8, 2025 (Docket # 53) ("Supp. Opp."). This letter supplements a filing Hadzijic made opposing defendants' previous attempt to enforce the parties' settlement agreement. See Opposition to Enforcement of Confidential Settlement Terms Summary Sheet, filed July 1, 2025 (Docket # 42) ("Opp."). Hadzijic also raised an argument against enforcing the parties' agreement in her motion to reopen the instant action. See Motion to Reopen, filed May 16, 2025 (Docket # 31) ("Hadzijic Mot.").

## I. BACKGROUND

Hadzijic filed this case on September 23, 2024.  See Compl.  She alleges that defendants, who were her employers, "singled [her] out," engaged in or failed to prevent "retaliatory harassment," and eventually illegally terminated her.  Compl. at 6-7.  Defendants answered Hadzijic's complaint on October 29, 2024, denying the allegations.  Answer, filed Oct. 29, 2024 (Docket # 14).  The parties then engaged in discovery.  See Stanley Decl. at ¶¶ 8-15.[2] On March 12, 2025, the parties jointly sought an order referring them to mediation.  See Letter from Richard Greenberg, filed Mar. 12, 2025 (Docket # 26).  The Court granted the request.  See Order, dated Mar. 13, 2025 (Docket # 28).  On April 15, 2025, a remote mediation conference took place.  See Stanley Decl. at ¶¶ 19-24.  The mediation started at 10:00 a.m. and lasted until 5:00 p.m.  Id. ¶ 21.  Plaintiff was represented by pro bono counsel.  Id. ¶ 23.  Defendants' counsel and plaintiff's pro bono counsel exchanged several drafts of an agreement to settle before ultimately agreeing to its final terms.  Id. ¶ 23.  The agreement was memorialized in a document entitled "Confidential Settlement Terms Summary Sheet."  See Ex. 1 annexed to Letter from Richard Greenberg, filed Sept. 26, 2025 (Docket # 57-1) ("Term Sheet").  The mediator did not end the mediation until the Term Sheet was "fully executed."  Id. ¶ 24.  The Term Sheet bears the signatures of defendants' general counsel and Hadzijic.  See Term Sheet.  The Term Sheet recites that defendants and Hadzijic "affirm[ed] that . . . they freely, knowingly, and voluntarily entered into this Term Sheet, which contains all material terms to the settlement of the lawsuit." Id. at 2.  One of the "WHEREAS" clauses in the Term Sheet states that "the terms set forth in this Confidential Settlement Terms Summary Sheet ("Term Sheet") shall be binding and

---

[2] Hadzijic does not controvert the facts attested to by defendants' attorney Annabel R. Stanley.

enforceable, notwithstanding the Parties' intention to subsequently execute a full form written settlement agreement." Id. at 1.

Included in the Term Sheet are provisions stating that defendants shall pay plaintiff a specified amount, that plaintiff releases any claims against defendants, that plaintiff agrees not to disparage defendants, and that the payment shall be made within 30 days of plaintiff providing certain documents. Id. ¶¶ 1, 2, 5, 7.

In the Term Sheet, plaintiff also agrees "not to disclose any information regarding the terms of this Term Sheet or the circumstances leading up to this Term Sheet. Plaintiff further affirms that confidentiality of these settlement terms and the facts and circumstances leading up to this settlement is her preference." Id. ¶ 4.

The Term Sheet further states that "Plaintiff agrees to sign a separate Non Disclosure Agreement in which Plaintiff will have twenty-one (21) days to consider the terms and conditions of the Non Disclosure Agreement." Id. ¶ 3.

After the mediation conference, the parties attempted to draft a "full form written settlement agreement." See Stanley Decl. ¶¶ 26, 28-30. While the attorneys eventually agreed to a draft, id. ¶ 30, it appears the parties never signed a final "full form written settlement agreement," and Hadzijic never signed the separate "Non-Disclosure Agreement" ("NDA") referenced in the Term Sheet.

Meanwhile, Judge Schofield, on receipt of the mediator's report indicating that the parties had reached an agreement, dismissed the instant action "without prejudice to restoring the action . . . provided [any] application to restore the action is made within thirty (30) days." Order, dated Apr. 29, 2025 (Docket # 30). On May 16, 2025, Hadzijic moved the Court for an order reopening the action, asserting that the Term Sheet "should not be honored so long as the long-

term sheet" — presumably referring to the contemplated "full form written settlement agreement" — "is not signed." Hadzijic Mot at 2. The Court granted Hadzijic's motion to re-open the case on the ground that the order closing the case "placed no pre-conditions on any party's request to restore the case to the calendar as long as the request was made within 30 days of the dismissal." Order, dated May 20, 2025 (Docket # 33).

On June 17, 2025, defendants filed a motion to enforce the Term Sheet. See Notice of Motion to Enforce Settlement, filed June 17, 2025 (Docket # 39). On July 25, 2025, the Court noted that the defendant's motion papers lacked adequate "citation[s] to evidence in the record" and a "sworn statement . . . that sets forth the factual narrative." Order, dated July 25, 2025 (Docket # 44). Accordingly, that motion was deemed withdrawn, see id., and defendants later filed the instant motion.

## II.  LEGAL STANDARDS

"A district court has the power to enforce . . . a settlement agreement reached in a case that was pending before it." BCM Dev., LLC v. Oprandy, 490 F. App'x 409, 409 (2d Cir. 2013) (quoting Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir. 1974)). "A party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement." Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc., 447 F. Supp. 2d 329, 335 (S.D.N.Y. 2006).

A settlement agreement is a contract and is therefore governed by contract law. Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007). Whether application of "federal or state law in order to decide a motion to enforce a settlement" is appropriate "has not yet been resolved by the Second Circuit." Dongguan Fengshang Indus. Co. v. Soho Partners Grp., 761 F. Supp. 3d 691, 694 n.3 (S.D.N.Y. 2025) (quoting Lee v. Grove Grp. Advisors LLC, 2024 WL 1077894, at *3

4

(S.D.N.Y. Feb. 29, 2024)).  Courts in this Circuit often apply New York contract law to resolve "whether the parties reached a settlement" because there is no "material difference" between federal common law and New York contract law on this issue.  Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 322 (2d Cir. 1997).

In considering a motion to enforce a settlement agreement, the Second Circuit in Murphy v. Institute of International Education distinguished between two types of agreements, which it refers to as "Type I" and "Type II" agreements.  32 F.4th 146, 150 (2d Cir. 2022).  A "Type I" agreement "occurs when the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation."  Id. (quoting Tchrs. Ins. & Annuity Ass'n of Am. v. Tribune Co., 670 F. Supp. 491, 498 (S.D.N.Y. 1987)).  A "Type II" agreement "is one that expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated."  Id. (quoting Tchrs. Ins. & Annuity Ass'n of Am., 670 F. Supp. at 498).

For purposes of determining whether "something constitutes a Type I Agreement," the Second Circuit has "referred to the four factors articulated in Winston v. Mediafare Entertainment Corp., 777 F.2d 78 (2d Cir. 1985)."  Id. at 151.  These are

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Winston, 777 F.2d at 80.  Nonetheless, in Murphy, the Second Circuit reiterated that "while these factors may be helpful, the ultimate issue, as always, is the intent of the parties: whether the parties intended to be bound, and if so, to what extent."  32 F.4th at 151 (internal citation and quotation marks omitted).

Additionally, because it is a contract, a settlement agreement may be set aside based on traditional contract law defenses "such as . . . mistake, duress, lack of capacity, or where the agreement is unconscionable, contrary to public policy, or so ambiguous that it indicates by its terms that the parties did not reach agreement." Rispler v. Spitz, 377 F. App'x 111, 112 (2d Cir. 2010).

III.     DISCUSSION

We first consider whether defendants have met their burden to demonstrate that the parties intended to be bound by the Term Sheet such that the agreement is enforceable. We then consider the defenses to enforcing the Term Sheet that are arguably raised by Hadzijic's filings. These consist of duress, mistake, and New York State laws that govern NDAs in cases involving employment discrimination. See N.Y. Gen. Oblig. ("GOL") § 5-336; N.Y. C.P.L.R. ("CPLR") § 5003-b.

A. Intent

Hadzijic does not provide any evidence that the parties did not in fact intend to be bound by the Term Sheet in accordance with their explicit statement that the Term Sheet was "binding." Hadzijic acknowledges that she signed the Term Sheet. Hadzijic Mot. at 1. She suggests that she opposes enforcement "so long as the long-term sheet is not signed." Id. at 2 (emphasis added). But this argument does nothing to counter the plain language of the agreement that states that the Term Sheet "shall be binding and enforceable." Term Sheet at 1. Accordingly, the Court considers reference to the Winston factors unnecessary. See Murphy, 32 F.4th at 151 (declining to apply the Winston factors where the "key issue" was not "whether the parties intended to be bound" but rather "what kind of agreement" the parties made). Nevertheless, to assess whether defendants have met their burden to show that an "enforceable settlement

agreement exists in this case, the Court routes its analysis through the <u>Winston</u> factors." <u>Chang</u>

<u>v. CK Tours, Inc.</u>, 605 F. Supp. 3d 529, 538 (S.D.N.Y. 2022).

The first <u>Winston</u> factor concerns "whether there has been an express reservation of the

right not to be bound in the absence of a writing." <u>Winston</u>, 777 F.2d at 80. Here, there has been

no such reservation. To the contrary, the signed Term Sheet states that "the terms set forth . . .

shall be binding and enforceable, notwithstanding the Parties' intention to subsequently execute a

full form written settlement agreement." Term Sheet at 1. The Term Sheet is a textbook example

of what the Second Circuit calls a "Type I" contract. <u>Murphy</u>, 32 F.4th at 150. The Second

Circuit has observed that "mediation agreements that include express language indicating that the

parties have reached agreement on all material terms," such as the Term Sheet, "are

presumptively Type I agreements — unless the parties explicitly reserve the right not to be bound

by the mediation agreement's terms until a final agreement is drafted and signed." <u>Id.</u> at 153.

Since there has been no reservation here, the first <u>Winston</u> factor strongly supports the

conclusion that the parties intended to be bound by the Term Sheet and thus that the Term Sheet

is enforceable.

Given that the first <u>Winston</u> factor is "frequently the most important," <u>Brown v. Cara</u>, 420

F.3d 148, 154 (2d Cir. 2005), and that the intent to be bound is so clearly expressed here, it

hardly seems necessary to address the other <u>Winston</u> factors. In any event, they do not suggest a

different outcome. The second <u>Winston</u> factor concerns "whether there has been partial

performance of the contract." <u>Winston</u>, 777 F.2d at 80. This factor has limited application here

because plaintiff very quickly sought to disavow the agreement, rendering it impossible for

defendant to undertake the steps contemplated by the agreement. In any case, this factor holds

"the least sway." <u>EMA Fin., LLC v. Flitways Tech., Inc.</u>, 2022 WL 1910078, at *3 (S.D.N.Y.

June 3, 2022) (quoting <u>Walker v. City of New York</u>, 2006 WL 1662702, at *8 (E.D.N.Y. June 15, 2006)).

The third <u>Winston</u> factor concerns "whether all of the terms of the alleged contract have been agreed upon." <u>Winston</u>, 777 F.2d at 80. Here, the Term Sheet states that it "contains all material terms to the settlement of this lawsuit" and, as discussed under the first <u>Winston</u> factor, indicates the parties' agreement to these terms. Term Sheet at 2. Because there is "literally nothing left to negotiate" here, <u>Winston</u>, 777 F.2d at 82, the third <u>Winston</u> factor weighs heavily in favor of the conclusion that the parties intended to be bound by the Term Sheet and thus that the Term Sheet is enforceable.

The fourth <u>Winston</u> factor concerns "whether the agreement at issue is the type of contract that is usually committed to writing." <u>Id.</u> at 80. The Second Circuit has explained that "<u>Winston</u> had in mind . . . a written instrument whose status as a binding contract has been acknowledged either by signature or by express oral acceptance." <u>Acun v. Merrill Lynch Pierce Fenner & Smith, Inc.</u>, 852 F. App'x 552, 556 (2d Cir. 2021). Here, there is indeed a written instrument whose status as a binding contract has been acknowledged by signature. Thus, the fourth <u>Winston</u> factor favors the conclusion that the parties intended to be bound by the Term Sheet and thus that the Term Sheet is enforceable.

In light of this analysis, the Court has no trouble concluding that the parties intended to be bound by the Term Sheet and thus that the Term Sheet is enforceable.

## B. <u>Duress</u>

Construing Hadzijic's papers liberally, they may be read to assert a duress argument inasmuch as Hadzijic asserts that she "requested to end mediation several times" during the April 15, 2025, mediation conference, and that these requests "were ignored by both the mediator and

[her] pro bono counsel." Hadzijic Mot. at 1.[3] The Court cannot assess Hadzijic's assertion, which is unsworn. In any event, "repudiation of an agreement on the ground that it was procured by duress requires a showing of both a wrongful threat and the effect of precluding the exercise of free will." Murphy, 32 F.4th at 153 (quoting United States v. Twenty Miljam-350 IED Jammers, 669 F.3d 78, 88 (2d Cir. 2011)). The mere fact that plaintiff asked more than once to end the session does not show that she was unable to exercise free will in signing the agreement. The duress defense fails also because there is no evidence that Hadzijic was not free to leave the mediation conference. See id. (finding no duress where "no one prevented [plaintiff] from leaving the mediation or continuing with the litigation"). That Hadzijic was free to leave is all the more obvious given that the mediation was conducted remotely.

C. Mistake

Hadzijic at one point states that the Term Sheet "should not be honored" because she "misinterpreted" the word "notwithstanding" in the agreement to mean "for as long as" in the "WHEREAS" clause reciting that the agreement was binding "notwithstanding" the parties' intention to execute a longer-form agreement. Hadzijic Mot. at 2. But "it is a fundamental principle of contract law that, absent circumstances amounting to unconscionability, an agreement is not invalidated by the mistake of one party if the other party has no knowledge of the mistake or any reason to believe that a mistake was made." Gregory v. Hansen, 2007 WL 9813141, at *3 (S.D.N.Y. Sept. 19, 2007) (citing Middle East Banking Co. v. State St. Bank Intern., 821 F.2d 897, 910 (2d Cir. 1986) and Restatement (Second) of Contracts § 153 (1981)).

---

[3] Perhaps alluding to plaintiff's statements at an untranscribed conference held on June 3, 2025, defendants at one point in their papers refer to "Plaintiff's claim that she had her baby with her and was distracted and felt pressured to end the mediation." Mem. at 9.

Here, as in Gregory, "Plaintiff's mistake . . . is clearly not one which would make enforcement of

this settlement agreement unconscionable," and "there is nothing in the record to suggest that

Defendants had any actual knowledge of Plaintiff's mistake." Id.

    D.  GOL § 5-336; CPLR § 5003-b

As noted earlier, it is unclear whether enforcement of an agreement to settle a federal

court action is governed by state law or federal common law. We need not resolve the question

because we do not view GOL § 5-336 and CPLR § 5003-b, even if they apply to the parties'

agreement to settle, as obstacles to enforcing the Term Sheet.

CPLR § 5003-b largely repeats certain provisions of the more comprehensive GOL §5-

336. While there are minor differences in language, none have any bearing on the outcome of

this case. Accordingly, we refer to the more comprehensive language of GOL § 5-336.

GOL § 5-336 provides in pertinent part that in a lawsuit alleging discrimination, an

employer shall not "have the authority" to include "any term or condition that would prevent the

disclosure of the underlying facts and circumstances to the claim or action" in a settlement —

"unless the condition of confidentiality is the complainant's preference." GOL § 5-336(a).

It further provides that:

> Any such term or condition must be provided in writing to all parties in plain English,
> and, if applicable, the primary language of the complainant, and the complainant shall
> have up to twenty-one days to consider such term or condition. If confidentiality is the
> complainant's preference, such preference shall be memorialized in an agreement signed
> by all parties. For a period of at least seven days following the execution of such
> agreement, the complainant may revoke the agreement, and the agreement shall not
> become effective or be enforceable until such revocation period has expired.

GOL § 5-336(b).

In relying on GOL § 5-336 to oppose enforcement of the Term Sheet, Hadzijic appears to

make three arguments.

First, Hadzijic argues that the term sheet "contains an immediate and binding confidentiality provision," which she argues "effectively imposes a non-disclosure obligation before the mandatory 21-day review applicable to such agreements." Opp. at 1; see also Supp. Opp. at 1-2. [4] Thus, Hadzijic concludes that Term Sheet should "only be deemed enforceable following compliance with the required 21-day review period." Id. at 2; accord Supp. Opp. at 2. "Enforcement of the Term Sheet as currently drafted," she insists, "would contravene New York employment law and the public policy it embodies." Id.; accord Supp. Opp. at 2. This argument refers to paragraph 4 of the Term Sheet, which states, "Plaintiff agrees not to disclose any information regarding the terms of this Term Sheet or the circumstances leading up to this Term Sheet. Plaintiff further affirms that confidentiality of these settlement terms and the facts and circumstances leading up to this settlement is her preference." Term Sheet ¶ 4.

The Court agrees with Hadzijic that her interpretation of paragraph 4, if correct, would implicate GOL § 5-336 to the extent paragraph 4 "prevent[ed] the disclosure of the underlying facts and circumstances to [her] claim or action" before 21 days had elapsed. GOL § 5-336(a). But we disagree that paragraph 4 reflects the intent of the parties to bar plaintiff from disclosing the underlying facts in the lawsuit. Instead, the language is clear that the information that must not be disclosed consists of the "circumstances leading up to this Term Sheet." Term Sheet ¶ 4. We view this language as unambiguously referring to the negotiations and other circumstances that were part of the settlement process that led to the Term Sheet --- not to the circumstances of her employment. This view is reinforced by the remaining language in this sentence which bars plaintiff from disclosing "the terms of this Term Sheet." Id. Together, these clauses are clear

---

[4] Hadzijic identifies the relevant New York law as "New York Civil Rights Law § 40-c," Supp. Opp. at 1, but in fact, the 21-day waiting period is imposed by GOL § 5-336 and CLPR § 5003-b.

that their intent is to bar plaintiff from revealing the back and forth of the negotiations as well as the actual terms of the Term Sheet.

This reading of paragraph 4 is further bolstered by the fact that the obligation to sign an NDA is referenced in a separate paragraph — paragraph 3 — and that paragraph 3 contains the 21-day waiting requirement mandated by GOL § 5-336. See id. ¶ 3. The parties thus recognized that the obligation to maintain the confidentiality of the information relating to negotiation of the Term Sheet did not implicate GOL § 5-336, which refers to obligations barring disclosure of the "underlying facts and circumstances to the claim or action." GOL § 5-336(a).

Because the paragraph 4 does not prohibit Hadzijic from disclosing "the underlying facts and circumstances to [her] claim or action" — a prohibition that was to be accomplished instead by the NDA — paragraph 4 does not implicate the 21-day waiting period provided in GOL § 5-336.

Plaintiff's second argument relates to paragraph 3 of the Term Sheet, which we shall refer to as the "NDA provision." The NDA provision states: "Plaintiff agrees to sign a separate Non Disclosure Agreement in which Plaintiff will have twenty-one (21) days to consider the terms and conditions of the Non Disclosure Agreement." Term Sheet ¶ 3. Plaintiff argues that the Term Sheet is "unenforceable until such time as the mandatory 21-day waiting period has been fully observed." Opp. at 2.

The parties both recognize that the NDA provision implicates the 21-day waiting period provided in GOL § 5-336. See Opp. at 1; Mem. at 2. There is no question that if plaintiff is required to sign the contemplated NDA, the Term Sheet gives Hadzijic 21days to consider it and seven days after signing to revoke it under GOL § 5-336.

At this stage of the case, however, defendants have stated their willingness to forgo their right under Term Sheet to require plaintiff to sign the NDA. See Mem. at 7 n.2; Reply at 2. This waiver is permissible because "[i]t is well settled that the party for whose benefit a condition is inserted in an agreement may waive the condition." Scalia v. Glielmi, 200 A.D.2d 614, 615 (App. Div. 1994) (internal citations and quotation marks omitted); accord Deffaa v. Pivotel Am., Inc., 2021 WL 3604752, at *9 (S.D.N.Y. Aug. 13, 2021) ("[A] party may unilaterally waive a contract provision that solely exists to their benefit.") (citing Williston on Contracts § 39:24 (4th ed.)). The NDA provision here imposed a unilateral obligation on plaintiff that inured entirely to the benefit of defendants. Thus, defendants may unilaterally waive it.

Given this waiver, the Court is left with determining whether GOL § 5-336 imposes a statutory waiting period before the Term Sheet, now minus the NDA provision, can take effect. We believe the answer is no for two reasons. First, with defendants' waiver of the NDA requirement, GOL § 5-336 does not apply. This is because with the omission of the NDA paragraph, defendants have not "include[d]" or "agree[d] to include" an NDA obligation --- which by the terms of GOL § 5-336 is a prerequisite to its applicability. Second, the statute states that the 21-day consideration period and 7-day revocation period apply only to "the agreement" at issue. GOL § 5-336(b). But the term "agreement" in the statute does not necessarily refer to the settlement agreement as a whole. Instead, the statute states any confidentiality provision shall be memorialized in "an" agreement, and it is that agreement that is subject to the waiting and revocation periods. Id. In other words, the agreement referred to in GOL § 5-336 is the one that contains the "condition of confidentiality" – here, the NDA provision, which has now been excised.

13

Certainly, an employer may make assent to an NDA a condition of settlement — meaning that the failure to sign the NDA or a revocation of the NDA voids entire settlement. But in this case defendants have waived their right to the enforce the NDA provision of the Term Sheet.

Plaintiff's third argument is that the purpose of GOL § 5-336 is "to ensure that claimants in discrimination and harassment cases have adequate time to deliberate settlement offers." Supp. Opp. at 2. We disagree with this characterization of New York law. To our knowledge, none of New York's discrimination statutes impose a waiting period requirement generally. Instead, New York imposed a waiting and revocation period only with respect to NDA's. Given that many settlements do not contain an NDA provision, the enactment of GOL § 5-336 reflects that its purpose is to allow claimants in discrimination cases to have adequate time to consider NDAs, not to consider settlements that do not require the signing of an NDA. Here, plaintiff is not being required to enter into an NDA and thus the purpose of GOL § 5-336 is not implicated.

\*       \*       \*

For these reasons, defendants are entitled to have the Term Sheet, without the inclusion of paragraph 3, enforced. In addition to not enforcing paragraph 3, certain other provisions in the Term Sheet cannot be enforced because the parties have not executed the contemplated "full form written settlement agreement." Term Sheet at 1. A court enforcing a settlement agreement has the power to enter a "settlement judgment" and that judgment may include terms that, even if not explicitly contained in an agreement, are "fairly implied by [the parties'] agreement." Janus Films, Inc. v. Miller, 801 F.2d 578, 582 (2d Cir. 1986). This same principle necessarily applies to terms to be omitted from a judgment if that omission is consistent with the parties' intent. Here the agreement states that in order to obtain payment, plaintiff must furnish to defendants "a copy

14

of an executed Settlement Agreement." Term Sheet ¶ 7. Because the text of a further written document was never agreed to, plaintiff shall be relieved of this obligation.

IV.     CONCLUSION

For the reasons started above, defendants' motion to enforce the settlement agreement (Docket # 47) should be granted. With the enforcement of the Term Sheet, plaintiff has released all claims in this case by virtue of the release language in paragraph 2 and as a result, judgment should be entered dismissing the case with prejudice. The judgment should further state that defendants shall pay the settlement amount to Hadzijic within 30 days of defendants' receipt from plaintiff of the documents specified in paragraph 7(i) and 7(ii) of the Term Sheet with the exception of the "executed Settlement Agreement."

**PROCEDURE FOR FILING OBJECTIONS TO THIS**
**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days including weekends and holidays from service of this Report and Recommendation to serve and file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). Such objections (and any responses to objections) shall be filed with the Clerk of Court, with copies sent to the Hon. Lorna G. Schofield, and to the undersigned, at 500 Pearl Street, New York, New York 10007. Any request for an extension of time to file objections must be directed to Judge Schofield. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).


Dated: October 10, 2025
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge